504 A.2d 294

COMMONWEALTH of Pennsylvania

v.

Jerry McKEITHAN, Appellant.

Superior Court of Pennsylvania.

Submitted June 21, 1985.

Filed Jan. 31, 1986.

Douglas W. Herman, Assistant Public Defender, Chambersburg, for appellant.

John R Walker, District Attorney, Chambersburg, for Commonwealth appellee.

Before CAVANAUGH, CERCONE and LIPEZ, JJ.

CERCONE, Judge:

Jerry McKeithan was found guilty of aggravated assault[1] by a judge sitting without a jury. He was sentenced on June 27, 1984, to undergo imprisonment in the Franklin County Prison for a period of not less than 20 months nor more than 59 months, to pay a fine of $300.00 and the costs of prosecution. Appellant was sentenced in accordance with the Deadly Weapon Enhancement of the Sentencing Guidelines.[2] In his timely filed Motion to Modify Sentence

1.  18 Pa.C.S.A. § 2702(a)(1)—A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

2.  **204 Pa.Code. § 303.4 Deadly weapon enhancement.**
    (a) When the court determines that the defendant or an accomplice possessed a deadly weapon, as defined in 18 Pa.C.S. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence which would otherwise have been imposed.
    (b) There shall be no such enhancement for convictions: under 18 Pa.C.S. § 2702(a)(4) (relating to aggravated assault); of violations of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. §§ 6101–6120; under 18 Pa.C.S. § 907 (relating to possessing instruments of crime); under 18 Pa.C.S. § 908 (relating to prohibited

and now on appeal, appellant advances several challenges to the constitutionality of the weapons enhancement provision and to the manner in which it was applied to him.

The charges arose from an altercation between appellant and one Willie James Thomas during the early morning hours of December 10, 1983. A fight had initially ensued between two women at a social club. When the fight moved outside, Thomas, the eventual victim, attempted to break it up. Appellant interfered saying "let the women fight". The two men exchanged angry words and when Thomas turned away, appellant stepped up and cut him across the neck. Thomas did not see a weapon, but testified at trial that he did see appellant drop something from his clenched right fist and heard it fall on the ground. Then the fight between the two men began. Thomas wrestled appellant to the ground and punched him several times before the fight was stopped. Thomas was heard to say, "Man, you cut me!" Appellant testified that he did not have a knife and that he did not cut Thomas. Moreover, his testimony was that Thomas struck him first.

Thomas was taken to a hospital and was treated in the emergency room. The two cuts on his neck required between 32 and 34 stitches, and the court's opinion describes the victim's scars as "very long and ugly". Debra Parr, a witness to the relevant events testified that later on the same day she heard appellant remark to some people, "Hey, man, did you hear what I did to Cricket." (It was established at trial that Thomas, the victim, was also know as "Cricket".) No knife was ever located.

Appellant's arguments on appeal are:
(1) The trial court erred in imposing the deadly weapon enhancement of 12 to 24 months in that it is a violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution and to similar provisions of the Pennsylvania Constitution

offensive weapons); or of any other offense for which possession of a deadly weapon is an element of the statutory definition.
(This section is incorporated in 42 Pa.C.S.A. § 9721(b).)

because it does not provide a standard of proof by which the sentencing court may determine that the defendant possessed a deadly weapon during the commission of this offense;

(2) The trial court erred in imposing the enhancement section in that the Commonwealth did not prove beyond a reasonable doubt at trial or at sentencing that appellant so possessed a deadly weapon;

(3) The trial court erred in sentencing appellant pursuant to the enhancement section because it is violative of due process in that the definitions of the elements of possession and deadly weapon are so vague that they fail to put a person of ordinary intelligence on notice that his contemplated conduct is unlawful.

## I

Appellant urges us to declare the challenged provision of the Sentencing Guidelines unconstitutional as a violation of due process for failing to specify a particular standard of proof for the determination of whether the provision is applicable to a case. The comparison between the provision with which we are concerned and section 9712 of the Mandatory Minimum Sentencing Act is unavoidable, since by both vehicles, in the proper case, convicted felons will incur more stringent penalties if they possessed certain enumerated weapons in the commission of crimes. *See Commonwealth v. Taylor, en banc,* 346 Pa.Superior Ct. 599, 500 A.2d 110, 119–120 (1985) (Comparison of both sections: the mandatory sentence section provides for a minimum standard of proof, preponderance of the evidence, whereas the guidelines provide none.)

Both sections come into play at sentencing proceedings, after the determination of guilt has been made by the fact-finder or a guilty plea has been accepted by the court. Despite the differences between the mandatory sentence section of the sentencing code and the enhancement section of the guidelines with which we are concerned in this case, the two provisions have more in common in the way they

affect a convicted defendant than the differences might suggest. For that reason, we consult the recent Pennsylvania Supreme Court case, *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), *cert. granted, McMillan v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985) for guidance.

In that case, the appellants challenged the preponderance of the evidence standard, which the legislature specified as applying in any § 9712 proceeding, as violative of due process. The Supreme Court looked to the language of § 9712 which states that visible possession of a firearm is not to be considered an element of a crime; as such it need not be proven beyond a reasonable doubt. The court explained further that a defendant's liberty risk, when weighed against the Commonwealth's interest in imposing a mandatory sentence, compels the conclusion that the preponderance standard satisfies minimum requirements of due process.

The court in *Wright* acknowledged with reference to United States Supreme Court decisions that the Due Process Clause is indeed implicated in sentencing proceedings, but that the convicted defendant need not be accorded "the entire panoply of criminal trial procedural rights." *Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393 (1977) in *Wright, supra*, 508 Pa. at 36, 494 A.2d at 360. It then set itself the task of deciding "what process is due", *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1922), to such a defendant.

The court weighed the liberty interest of the defendant with the Commonwealth's interest in imposing a mandatory sentence. It emphasized that a defendant facing a § 9712 proceeding is in no different position from other convicted defendants facing sentence. As the legislature has by statute prescribed statutory limits within which courts may sentence in general, it has set a mandatory minimum of five years imprisonment by § 9712. The maximum sentence for

the particular felony remains unaffected. The court then stated the countervailing interest.

The Commonwealth seeks to protect the public from armed criminals and to deter violent crime and the use of firearms generally, as well as to vindicate its interest in punishing those who commit serious crimes with guns. *Wright, supra,* 508 Pa. at 41, 494 A.2d at 362.

The court concluded that the risk of error in a § 9712 proceeding was slight, that visible possession of a firearm is a simple, straightforward issue susceptible of objective proof, and amenable to meaningful appellate review. Thus, the court concluded that because a defendant has no "right" to avoid punishment and no "right" to a particular punishment within the pertinent statutory range, that the standard of proof represented by the preponderance standard of § 9712 satisfies the minimum requirements of the Due Process Clause in the context of a sentencing proceeding.

Now, turning our attention to the concern in this appeal, that the deadly weapon enhancement section of the Sentencing Guidelines is violative of the Due Process Clause for failure to set forth a standard of proof, we consider the effect of the enhancement section on a convicted defendant. A sentence of at least 12 to 24 months confinement shall be added to the guideline sentence which would otherwise have been imposed. However, just as with a § 9712 proceeding, the maximum possible penalty is not affected. This is addressed in § 303.1(i), 204 Pa.Code, of the guidelines.

(i) When the guideline sentence exceeds that permitted by 18 Pa.C.S. §§ 1103 and 1104 (relating to sentence of imprisonment for felony and misdemeanors) and 42 Pa. C.S. §§ 9755(b) and 9756(b) (relating to sentence of partial and total confinement) or other applicable statute setting maximum term of confinement, then the statutory limit is the guideline sentence.

Thus, any confinement time that exceeds the statutory maximum because of the application of the guidelines is cut off to conform to the statutory maximum. A defendant subject to a deadly weapon enhancement is in a position not

significantly distinguishable from other convicted defendants during the sentencing phase.

We see no reason to distinguish the determination of whether a mandatory sentence under § 9712 should apply to a convicted defendant from the determination of whether the deadly weapon enhancement should so apply. (*See Commonwealth v. Taylor, supra,* Dissent by Wickersham, J.) There are advantages in the interest of consistency. It would be anomalous indeed for us to set forth a higher standard of proof for the deadly weapon enhancement than that approved of in § 9712 when no palpable distinction exists between the two considerations.[3]

3. One possible difference in the two provisions is the requirement in § 9712 that the Commonwealth provide a convicted defendant with *notice of its intent to invoke the mandatory minimum against him.* But the seeming lack of notice, since such is not provided for in the enhancement section, was the concern of this court in *Commonwealth v. Taylor, supra.* There, our court affirmed a sentencing court's refusal to sentence in accordance with the enhancement section. (5 judges joined parts I and II of the opinion, the pertinent parts for our discussion at this point) The defendant in that case had been initially charged in the criminal complaint with aggravated assault involving a deadly weapon, § 2702(a)(4) of the Crimes Code. Then, when the Information was filed, the defendant was charged with aggravated assault, § 2702(a)(1) which does not require the use of a deadly weapon. The defendant pleaded guilty to aggravated assault, theft by unlawful taking, and unlawful restraint. At sentencing, the Commonwealth introduced testimony from the victim that a knife was used in the assault. And it was on this basis that the Commonwealth sought the deadly weapon enhancement. The court concluded:

"On the basis of the charge in the information, the Commonwealth, by *limiting the proof to causing or attempting to cause serious bodily injury to another,* knowingly or recklessly, under the circumstances manifesting extreme indifference to the value of human life, is bound by its charge and cannot go beyond the allegation in the information and proceed to offer proof of the use of a deadly weapon at sentencing." *Taylor, supra,* 346 Pa.Superior Ct. 608, 500 A.2d at 115.

In effect, this court limited the invocation of the deadly weapon enhancement to those cases which, in the usual course of the filing of the information and the presentation of the requisite conforming proof at trial or at a guilty plea proceeding, provide notice to a defendant that he will be sentenced specially for his use of a deadly weapon during the crime for which he was convicted. Absent some mention of such a weapon prior to sentencing, the enhancement section will not apply.

■ Application of the preponderance standard in a deadly weapon enhancement situation is also internally consistent with subsection (b) of the deadly weapon enhancement section, which precludes from enhancement any conviction for which possession of a deadly weapon is an element of the statutory definition; for example, 18 Pa.C.S.A. §§ 2702(a)(4) (aggravated assault), 6101–6120 (Uniform Firearms Act), 907 (possessing instruments of crime), etc. As in the case of § 9712 as discussed in *Wright, supra,* the possession of a deadly weapon is not an element of a crime, but a sentencing factor. Unlike the elements of a crime which must be proven beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the legislature, by setting up possession of a deadly weapon as a sentencing factor, has left it for us, the judiciary, to determine the degree of proof which is necessary to invoke the enhancement. This determination has been traditionally left to the judiciary to resolve. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Therefore, in light of the foregoing discussion, and with a concern for harmony and simplicity regarding the possible sentencing hearing considerations, we hold that the standard of proof which must govern the applicability of the deadly weapon enhancement is the preponderance of the evidence.

## II

■ However, the task remaining is to consider whether the facts of this case prove that appellant possessed a deadly weapon in his assault on Willie James Thomas. Appellant emphasizes that no one ever saw a weapon, nor was any ever found. He concludes that the sufficient proof was not presented that he possessed one.

The weapon enhancement section cites to the definition of "deadly weapon" in 18 Pa.C.S.A. § 2301 as pertaining to it. That is, a "deadly weapon" for purposes of the deadly weapon enhancement is

"Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing

death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301. We do not hesitate under the facts of this case to conclude that the evidence established beyond a reasonable doubt, albeit circumstantially, that appellant used a "device or instrumentality which, in the manner in which" appellant used it, was calculated or likely to produce serious bodily injury.

As the trial court reasoned,

A person may be convicted on the basis of circumstantial evidence alone if reasonable inferences arising therefrom prove the fact in question beyond a reasonable doubt. *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A:2d 796 (1972); *Commonwealth v. Stanley*, 456 [453] Pa. 467, 309 A.2d 408 (1973). We believe the evidence presented at trial is proof beyond a reasonable doubt that the defendant had to slash the victim with a deadly weapon.

Moreover, our conclusion that the possession of a deadly weapon for purposes of weapon enhancement of sentencing may be proved by circumstantial evidence is bolstered by this court's recent decision in *Commonwealth v. Healey*, 343 Pa.Superior Ct. 323, 494 A.2d 869 (1985). There, in the context of the Mandatory Minimum Sentence for visible possession of a firearm, this court, reversing the trial court, held that where a defendant shot his victim through a closed door, he nevertheless "visibly possessed" a firearm.

We define 'visibly possessed' as possession which manifests itself in the process of the crime. This definition would include situations where a firearm is visible to the eye of the victim or a third party. Additionally, it would encompass situations where, as in the case sub judice, a firearm is hidden but has a visible effect on the victim. In the latter context, our definition would cover an individual who points a firearm inside his pocket and then

threatens his victim by informing the victim that a firearm is aimed at the victim.

> In the case sub judice, it does not matter that the victim could not see that appellee was visibly possessed of the firearm. The appellee possessed a firearm and used it to produce a visible effect on the victim. *Id.*, 343 Pa.Superior Ct. at 326, 494 A.2d at 870.

So also in this case. The fact that the device or instrumentality employed by appellant in committing the aggravated assault was fortuitously not seen or found will not allow appellant to escape the application of the weapon enhancement to his sentence. We conclude that its use was proven beyond a reasonable doubt. *See Commonwealth v. Charles*, 339 Pa.Superior Ct. 284, 488 A.2d 1126 (1985) (Appellant's due process challenge void where sentencing factor proven at trial beyond a reasonable doubt.)

## III

■ In support of his last contention, that the enhancement provision is void for vagueness, appellant refers us to the recent *en banc* decision *Commonwealth v. Taylor, supra.* In the third section of that opinion, joined only by two judges and thus not commanding a majority of the court, the weapon enhancement provision was declared unconstitutionally vague. We are not inclined to adhere to this analysis and because the holding was not joined by a majority of the *en banc* panel, we are not so bound.

Our Supreme Court set forth the parameters of our review in *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980), a case in which the state disorderly conduct statute was found not to be unconstitutionally vague.

In reviewing appellant's facial attack on the vagueness of the statute in question, it is important to remember what we stated in *Commonwealth v. Heinbaugh*, 467 Pa. 1, 4–5, 354 A.2d 244, 245 (1976), that:

> 'Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party

challenging the statute engaged.' (Footnote omitted.) *Id.*, 489 Pa. at 259, 414 A.2d at 56.

The instant case is akin to *Heinbaugh*, the case cited in the above quotation, in that in neither instance was an infringement of First Amendment activity asserted. In such a vagueness attack, to review a statute facially would require this court "to adjudicate the rights of parties not presently before the court, at the insistence of a party who does not have standing to assert such rights." *Heinbaugh, supra*, 467 Pa. at 4, 354 A.2d at 245. Thus, we must judge the specificity of the statute in question in light of appellant's particular conduct in this case.

> In order to comply with the due process clauses of both the Pennsylvania Constitution and the Constitution of the United States, a criminal statute must be sufficiently certain and definite to inform the accused of the acts which the statute is intended to prohibit and which will render him liable to its penalties. 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess [as to] its meaning and differ as to its application [lacks] the first essential of due process of law.' [Citations omitted.] *Chester v. Elam*, 408 Pa. 350, 356, 184 A.2d 257, 260 (1962).

Again, the pertinent section of the statute which appellant challenges as unconstitutionally vague reads,

> When the court determines that the defendant or an accomplice possessed a deadly weapon, as defined in 18 Pa.C.S. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence which would otherwise have been imposed.

The crux of the provision involves possession of a deadly weapon during the commission of the current conviction offense. Initially, we note the presumption of constitutionality inherent in any ascertainment of legislative intent. 1 Pa.C.S.A. § 1922(3).

Interpreting this statute in a common sense manner as we must, 1 Pa.C.S.A. § 1903; *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982), and with a view toward regarding the letter of the law from the clear and unambiguous language, 1 Pa.C.S.A. § 1921(b), we do not find anything so uncertain or indefinite in the weapons enhancement provision which would have prevented appellant from realizing that his use of device in his assault on the victim which was capable of causing two "very long and ugly" scars was that kind of behavior punishable by the enhanced sentence.

■ The enhancement provision simply provides that if a court determines that one commits a crime while possessing a deadly weapon, as particularly defined, he or she is subject to an enhanced sentence of 12 to 24 months confinement. The definition of "deadly weapon" dispels any uncertainty as to what degree of possession is necessary. Again, it reads,

Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury. 18 Pa.C.S.A. § 2301.

Intrinsic to the definition is the phrase, "... in the manner in which it is used or intended to be used ...". Thus, a requisite intent to use the weapon in the commission of the convicted crime must be apparent from the evidence. The weapon, to be deadly, must be used or intended to be used while the defendant committed the particular crime. Our interpretation is consistent with the interest of society in punishing those who commit crimes with deadly weapons, crimes which do not have as an essential element the possession of a deadly weapon but, during which, the presence of such a deadly weapon intensified the harm perpetrated against the victim. This is what occurred in the instant case and appellant was properly sentenced in accordance with the weapons enhancement provision.

Therefore, judgment of sentence is affirmed.